☑ FILED          ___ LODGED
___ RECEIVED     ___ COPY

OCT 2 8 2024

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____DEPUTY

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Charles H. Landwer,<br>27W165 Schick Road<br>Hanover Park, Illinois<br>60133-6719 | Case Number: ___CV-24-2930-PHX-DMF___ |
| Plaintiff, | |
| vs. | |
| American – Amicable Life Insurance<br>Company of Texas, | Judge _____ |
| Defendant, | |
| US Funeral Expenses, | Magistrate _____ |
| Defendant, | |
| John Doe I,<br>(a.k.a. Ryan Hawkins), | Jury Trial Demanded |
| Defendant. | |

## COMPLAINT AT LAW

NOW COMES the Plaintiff, Charles H. Landwer, pro se, and files the Plaintiff's Complaint At Law pursuant to Federal Statutes as set forth below against the Defendant(s), American – Amicable Life Insurance Company of Texas, US Funeral Expenses, and John Doe I (a.k.a. Ryan Hawkins).

In support of the Plaintiff's Complaint At Law, the Plaintiff states as follows:

1

## JURISDICTION AND VENUE

1)    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331,

1337(a), 1355 and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(g)(2).

2)    Venue is proper in this District under 28 U.S.C. §§ 1391(b), 1395(a), and 47 U.S.C. §

227(g)(4). A substantial part of the acts, events or omissions giving rise to the claims alleged in

this Complaint occurred in the District of Arizona.

3)    Venue is proper in the District of Arizona, because the Defendant(s):

    (a)    is/are authorized to conduct business in this district and has intentionally availed

        itself of the laws and markets within this district;

    (b)    does substantial business within this district:

    (c)    is/are subject to personal jurisdiction in this district because it has availed itself

        of the laws and markets within this district; and,

    (d)    the injury to the Plaintiff occurred within this judicial district.

4)    The Court has federal question jurisdiction over the TCPA claims. Mims v. Arrow

Financial Services, LLC, 132 S.Ct. 740 (2021).

5)    The Plaintiff has notified the Federal Communications Commission of this civil action.

## PARTIES

6)     The Plaintiff is a natural person, an individual, who maintains a residential address of 27W165 Schick Road, Hanover Park, DuPage County, Illinois 60133-6719 and currently resides in Maricopa County, Arizona.


7)     The Defendant, American – Amicable Life Insurance Company of Texas, is a Texas Company, the American-Amicable Life Insurance Company of Texas is a progressive special markets insurer. The Company offers innovative life insurance and annuity products developed to target the individual needs of protection, wealth creation and estate preservation, that maintains a Mail Drop, at P.O. Box 2549 Waco, Texas 76702-2549 and a Physical Address at 425 Austin Avenue, Waco, Texas 76701-2127 and a Corporate Registered Agent of Amber Adams, located at P. O. Box 2549, Waco, Texas 76702-2549.


8)     The Defendant, US Funeral Expenses, markets and sells Life Insurance products to individuals who have been identified for targeting by the Defendant American – Amicable Life Insurance Company of Texas. They maintain a Company office at US Funeral Expenses 2027 152nd Avenue NE, Redmond, Washington 98052-5521.


9)     The Defendant, John Doe I (a.k.a. Ryan Hawkins), is a telephone marketer, for US Funeral Expenses. The Defendant, US Funeral Expenses, managed and employs/employed agents, sub-agents and marketers to place telephone sales calls to prospective clients identified by the Defendant American – Amicable Life Insurance Company of Texas.

10)     The Defendant, John Doe I, (a.k.a. Ryan Hawkins) is a sub-agent of the Defendant, US

Funeral Expenses, The Defendant, US Funeral Expenses, is an agent of the Defendant, American

– Amicable Life Insurance Company of Texas.

## The Telephone Consumer Protection Act

11)     The Telephone Consumer Protection Act, TCPA, enacted in 1991, amended the

Communications Act of 1934 by adding 47 U.S.C. § 227, which requires the Federal

Communications Commission ("FCC") to... initiate a rulemaking proceeding concerning the need

to protect residential telephone subscribers' privacy rights to avoid receiving telephone

solicitations to which they object. . . . The regulations required by [the TCPA] may require the

establishment and operation of a single national database to compile a list of telephone numbers

of residential subscribers who object to receiving telephone solicitations, and to make that

compiled list and part thereof available for purchase. If the Commission determines to require such

a database, such regulations shall- ... (F) prohibit any person from making or transmitting a

telephone solicitation to the telephone number of any subscriber included in such database . ... . 47

U.S.C. § 227(c)(l) and (c)(3).

12)     In 1992, the FCC promulgated rules pursuant to the TCPA.

13)     On June 26, 2003, the FCC revised its rules and promulgated new rules pursuant to the

TCPA. These new rules established a "do not call" registry (the "National Do Not Call Registry"

or "Registry") of consumers who do not wish to receive certain types of telemarketing calls.

Consumers can register their telephone numbers on the Registry without charge either through a toll-free telephone call or over the Internet at www.donotcall.gov.

14)    Sellers, telemarketers, and other permitted organizations can access the Registry over the Internet at telemarketing.donotcall.gov to download the registered numbers.

15)    A relevant FCC Do-Not-Call Rule, 47 C.F.R. § 64.1200(c), provides in part: "(c) No person or entity shall initiate any telephone solicitation [as defined in paragraph (f)(14) of this section] to ... (2) A cellular telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." The Do-Not-Call list is maintained at https://www.donotcall.gov and is available for telemarketers to check telephone numbers.

16)    The TCPA itself and another relevant FCC Rule, 47 U.S.C. § 227(a)(4) and 47 C.F.R. § 64.1200(f)(14), respectively, provide in part: "The term telephone solicitation means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person ..."

17)    The TCPA itself and another relevant FCC Rule, 47 U.S.C. § 227(b)(l)(B) and 47C.F.R.§ 64.1200(a)(3), respectively, provide that it is unlawful for a person to: "Initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party unless the call ... [is specifically exempted by rule or order]."

5

18)    The TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), makes it unlawful for any person to: "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using… an artificial or prerecorded voice… to any telephone number assigned to a… cellular telephone service…" Relevant FCC Rule 47 C.F.R. § 64.1200(a)(1)(iii) similarly prohibits persons from initiating calls to a cellular telephone using an artificial or prerecorded voice without the prior express consent of the called party. Relevant FCC Rule C.F.R. § 64.1200(a)(2) further prohibits persons from initiating or causing to be initiated calls that include or introduce an advertisement or constitute telemarketing to cellular telephones using an artificial or prerecorded voice without the prior express written consent of the called party. There is no difference between a cellular based telephone or a landline-based telephone when making a telemarketing telephone call. The FCC rules need to be followed so as to assure the telephone calls are being made pursuant to the Telephone Consumer Protection Act.

19)    The TCPA, 47 U.S.C. § 227(d)(3)(A) and FCC Rule, 47 C.F.R. § 64.1200(b)(1), provide in part that "all artificial or prerecorded voice telephone messages shall… at the beginning of the message, state clearly, the identity of the business, individual, or other entity that is responsible for initiating the call. If a business is responsible for initiating the call, the name under which the entity is registered to conduct business with the State Corporation Commission (or comparable regulatory authority) must be stated."

20)    The TCPA itself and another relevant FCC Rule, 47 U.S.C. § 227(e)(1) and 47 C.F.R. § 64.1604(a), respectively, provide that it is unlawful for a person "with the intent to defraud, cause

harm, or wrongfully obtain anything of value" to cause any caller identification service to transmit or display "misleading or inaccurate caller identification information."

21)    Congress enacted the TCPA to prevent unsolicited calls to consumers' cellphones. "Voluminous consumer complaints about abuses of telephone technology - for example, computerized calls dispatched to private home - prompted Congress to pass the TCPA," Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 744 (2012).

22)    Congressional committees investigating the use of telecommunications technology found that legislation was necessary to prevent abusive calling practices and protect consumers from invasions of privacy, harassment, and economic harm. The Senate Committee on Commerce, Science, and Transportation found that "the Federal Communications Commission (FCC) received over 2,300 complaints about telemarketing calls" in the year preceding the TCPA's passage, stating *inter alia* that "unsolicited calls placed to... cellular... telephone numbers often impose a cost on the called party (...[where, e.g.] cellular users must pay for each incoming call...)." *See* S. Report No. 102-178, 1991 U.S.C.C.A.N. 1968, 1991 WL 211220 at *2 (Oct. 8, 1991). The House Committee on Energy and Commerce concurred, finding that "expert testimony, data, and legal analyses comprising the Committee's record, and broad support of consumers, state regulators, and privacy advocates clearly evidence that unsolicited commercial telemarketing calls are a widespread problem and a federal regulatory solution is needed to protect residential telephone subscriber privacy rights." H.R. Report No. 102-317, 1991 WL 245201at *18 (Nov. 15, 1991).

23)    When it passed the TCPA, Congress intended to provide consumers a choice as to how callers may call them and found that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." Pub L. No. 102-243, § 11.

24)    The Congress also found that "[m]any consumers are outraged over the proliferation of intrusive, nuisance call," and that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy..." Pub L. No. 102-243, §§ 12-13.

25)    The TCPA further provides an affected individual can bring an action to recover for actual monetary loss or receive five hundred (500) dollars damages for each violation, or both. If the court finds the defendant willfully or knowingly violated such regulations, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the preceding sentence. 47 U.S.C. § 227(g)(1). This Court, may award other ancillary relief to remedy injuries caused by the Defendants violations of the TCPA.

## Nature Of The Case

26)    In an effort to promote their Life Insurance coverage products, the Defendant American – Amicable Life Insurance Company of Texas, contracted with the Defendant, US Funeral Expenses, whom, engaged in an especially invasive form of advertising: the transmission of prerecorded messages through unsolicited robocalls - an automated telephone call, as defined by 47 U.S.C. § 227(a)(1), which delivers a recorded message, typically on behalf of a telemarketing company - to the cellular telephones of individuals throughout the country, including the Plaintiff.

27)     The Defendant, American – Amicable Life Insurance Company of Texas, is liable for these illegal calls, even though it did not initiate them. The Defendant has had several complaints filed and has received negative feedback and reviews on the Internet for the same type of conduct, complained of by the Plaintiff in the Plaintiff's <u>Complaint At Law</u>.

28)     The Defendant, American – Amicable Life Insurance Company of Texas, continues to accept business derived from these illegal calls, thus ratifying the illegal calls that are made by and authorized by agents, sub-agents and marketers.

29)     The Defendant, American – Amicable Life Insurance Company of Texas, has expressly or through conduct/omission, authorized agents, sub-agents and marketers to use its Company Name during telemarketing, thus giving the outward impression that the telemarketers are the Defendant's, American – Amicable Life Insurance Company of Texas, authorized agents, sub-agents or marketers.

30)     The advancements in telephone dialing technology by the 1980's and 1990's made reaching a large number of consumers by telephone easier and more cost-effective. However, this technology has also brought with it an onslaught of unsolicited robocalls, spam text messages, and junk faxes that intrude on individual privacy and waste consumer time and money. These are the types of activities that, the Defendant, US Funeral Expenses and American – Amicable Life Insurance Company of Texas, illegally engaged in and practiced.

31)    The Federal government and numerous states, including Arizona, have enacted legislation to combat these widespread telecommunication abuses. As the United Sates Congress recognized:

> Many customers are outraged over the proliferation of intrusive, nuisance calls... Banning such automated or prerecorded marketing telephone calls to the cellular telephone, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

32)    As is relevant here, federal law under the TCPA prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii).

33)    The TCPA provides for injunctive relief and the greater of actual damages or five hundred (500) dollars per violation, which can be trebled where the statute was "willfully or knowingly" violated. 47 U.S.C. § 227(b)(3).

34)    However, as set forth in more detail below, the Defendant, American – Amicable Life Insurance Company of Texas, has authorized agents, sub-agents and marketers that failed to obtain the 'called parties' prior express consent before calling them. By making these unsolicited robocalls to individuals' cellular telephones without the individuals' prior express consent, the Defendant, American – Amicable Life Insurance Company of Texas and the Defendant, US Funeral Expenses, has violated the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227 et seq., and the Automatic Telephone Dialers Act, (the "ACT") as well as consumers' privacy rights.

35)    In an attempt to circumvent the TCPA and the ACT, the Defendant, American – Amicable Life Insurance Company of Texas authorized the agents, sub-agents and marketers, to utilize computer-based technology to make prerecorded voice calls to the Plaintiff promoting American – Amicable Life Insurance Company of Texas Life Insurance products. This technology utilizes a random number, computer generated by the area the Defendant, American – Amicable Life Insurance Company of Texas, wanted the agents, sub-agents and marketers to target. The computer used a technology that utilized a technique referred to in the industry as "Neighborhood Spoofing," this technique masks the true number the call originated from and instead shows a local number on the called parties "Caller Identification."

36)    When the called party answered the telephone call, a pre-recorded message informs the called party that they have been chosen because they had completed or performed some act in the past that qualifies them for some type of discount or reduced charge. The Defendant instructed their agents, sub-agents and marketers to inform the called party that, *"I'm with US Funeral Expenses, and based on our records, it shows that you may qualify for a state-regulated final expense insurance plan. That's going to cover 100 % of your funeral, burial, and cremation expense. Are you between the ages of 50 and 80 years old?"*

37)    The Defendant, US Funeral Expenses, as an experienced telemarketer - through agents, sub-agents and marketers - knew or should have known, that they were prohibited by the TCPA and the ACT from contacting consumers on the National Do Not Call Registry by calling their cellular telephones with automated and prerecorded voice calls without the consumers' prior express consent. These actions were in direct violation of the TCPA and the ACT.

38)    The Plaintiff never consented in writing, authorized, desired, or permitted the Defendant US Funeral Expenses' agents, sub-agents and marketers to make the prerecorded voice calls alleged herein to his cellular telephone number, 312.590.8028.

39)    The Defendant, US Funeral Expenses, by making such unauthorized prerecorded voice calls to the Plaintiff's cellular telephone, agents, sub-agents and marketers caused Plaintiff actual, concrete harm, including aggravation, nuisance, intrusion upon seclusion, and invasion of his privacy. These actions were in direct violation of the TCPA and the ACT.

40)    Through this action, the Plaintiff seeks redress for the Defendant, American – Amicable Life Insurance Company of Texas and the Defendant, US Funeral Expenses, agents, sub-agents and marketers' violations of the TCPA and the ACT and for willfully and knowingly violating Plaintiff's privacy rights.

**Defendant American – Amicable Life Insurance Company of Texas Business Practices**

41)    The Defendant utilizes "Stake Holders". The Defendant defines "Stake Holders" as employees, agents, sub-agents, marketers, administrators, affiliates, clients and trading partners. These "Stake Holders" are used in various capacities to promote the Defendant's Life Insurance coverage products.

42)    The Defendant, American – Amicable Life Insurance Company of Texas, has a contractual relationship with, the Defendant, US Funeral Expenses, whose agents, sub-agents and marketers contact prospective customers for the Defendant, American – Amicable Life Insurance Company

of Texas, Life Insurance coverage products and attempt to market and sell the Defendant's Life Insurance coverage products. This contractual relationship with US Funeral Expenses, and the agents, sub-agents and marketers provides actual and apparent authority.

43)    The Defendant, US Funeral Expenses, has authority and continues to maintain authority over the agents, sub-agents and marketers that market and sell the Defendant, American – Amicable Life Insurance Company of Texas, Life Insurance coverage products. This authority creates a liability that the Defendant, American – Amicable Life Insurance Company of Texas, bears for the actionable conduct of the agents, sub-agents and marketers based on the contractual relationship between the two parties. The agents, sub-agents and marketers were working under the direct supervision of the Defendant, US Funeral Expenses. They were instructed regarding the timing, quantity and geographical location of the robocalls.

44)    The Defendant, American – Amicable Life Insurance Company of Texas, is vicariously liable for the actions of the agents, sub-agents and marketers because these actions were authorized, approved and acquiesced to, by the Defendant, American – Amicable Life Insurance Company of Texas. The harm to the Plaintiff was foreseeable and these actions were committed with the intent of furthering the objective of selling the Defendant, American – Amicable Life Insurance Company of Texas, Life Insurance coverage products.

45)    While sometimes called "imputed liability," imputed liability is an attachment of responsibility to a person for harm or damages caused by another person in either a negligence lawsuit or criminal prosecution. Thus, an employer of an employee who injures someone through

negligence while in the scope of employment (doing work for the employer) is vicariously liable for damages to the injured person. The Defendant, American – Amicable Life Insurance Company of Texas, in the present matter, is liable for the illegal actions of the Defendant, US Funeral Expenses. US Funeral Expenses, agents, sub-agents and marketers, who were acting under the authority, direction and supervision of the Defendant, American – Amicable Life Insurance Company of Texas.

46)    The Defendant, US Funeral Expenses, authorized the agents, sub-agents and marketers to use the American – Amicable Life Insurance Company of Texas sales scripts which were developed over many years of use and refinement by American – Amicable Life Insurance Company of Texas and its former and current Stake Holders.

47)    The Defendant authorized the agents, sub-agents and marketers to use the Defendant, American – Amicable Life Insurance Company of Texas, trade name to facilitate the marketing and selling of Life Insurance products.

48)    The Defendant, American – Amicable Life Insurance Company of Texas, authorized the agents, sub-agents and marketers to use the American – Amicable Life Insurance Company of Texas proprietary information when making marketing calls. This marketing information includes customers billing information, health maintenance history and information about patients/customers and their health and pre-existing conditions through their affiliation with the Medical Information Bureau located at 50 Braintree Hill Park, Suite 400, Braintree, Massachusetts 02184-8734.

49)    The Defendant authorized the agents, sub-agents and marketers to use the American – Amicable Life Insurance Company of Texas proprietary information when making marketing calls. This information included but was not limited to databases of prior contacts with customers and prospective customers.

50)    The Defendant, American – Amicable Life Insurance Company of Texas, authorized the agents, sub-agents and marketers to use the American – Amicable Life Insurance Company of Texas proprietary information and databases which allowed the agents, sub-agents and marketers access to quotes in real time when conducting lead generation, sales calls and marketing calls. The information available to the Defendant, American – Amicable Life Insurance Company of Texas, agents, sub-agents and marketers was information not available to others who were not-affiliated with the Defendant, American – Amicable Life Insurance Company of Texas.

51)    The Defendant, American – Amicable Life Insurance Company of Texas, paid an additional fee to the authorized agents, sub-agents and marketers to make phone calls during the hours of 8 a.m. until 8 p.m. EST and MST. Several of the authorized agents, sub-agents and marketers are located overseas in the Philippines. The time difference is twelve hours for EST and fourteen hours for MST. If calls were going to be placed between the hours of 8 a.m. and 8 p.m. MST, the calls would be placed between 10 p.m. and 10 a.m. MST in the Philippines. The agents, sub-agents and marketers that place calls during those hours require an additional fee for working through the night.

52)     The Defendant, American – Amicable Life Insurance Company of Texas, instructed its agents, sub-agents and marketers to make phone calls to mature neighborhoods that historically have older residents. The older residents are more sensitive to expenses and the need for final expense insurance coverage are advantageous places to sell their Life Insurance coverage products. The Defendant, American – Amicable Life Insurance Company of Texas, instructed its agents, sub-agents and marketers to place calls to older people encouraging them to purchase the Defendant's Life Insurance coverage products.

53)     The Defendant, American – Amicable Life Insurance Company of Texas, completely understands who their ideal customers are and instructs their agents, sub-agents and marketers to target these primarily older customers for their services through the techniques the Defendant, American – Amicable Life Insurance Company of Texas, has found productive in the past.

54)     The Defendant, American – Amicable Life Insurance Company of Texas, agents, sub-agents and marketers use techniques, recommended, approved and ratified by the Defendant, American – Amicable Life Insurance Company of Texas, such as placing calls to prospective customers whose numbers appear on the "National Do Not Call Registry"; utilizing "Spoofing" and "Neighborhood Spoofing"; use of "robocalls"; use of "Automatic Telephone Dialers" and use of "prerecorded voices calls," to entice their ideal customer to answer the telephone call. The Defendant, American – Amicable Life Insurance Company of Texas, agents, sub-agents and marketers uses these techniques to have the called party listen to the sales pitch and accept the services the Defendant, US Funeral Expenses were offering on behalf of the Defendant, American – Amicable Life Insurance Company of Texas.

55)    The Defendant, American – Amicable Life Insurance Company of Texas, is a Texas business. The Defendant, US Funeral Expenses, is registered to conduct business in the state of Florida. The techniques that are utilized, calling numbers that appear on the "National Do Not Call Registry"; "Spoofing", "Neighborhood Spoofing"; "robocalls"; "Automatic Telephone Dialers" and "prerecorded voices calls," are in direct violation of the TCPA and the ACT.

56)    The Defendant, American – Amicable Life Insurance Company of Texas, has given their agents, sub-agents and marketers authority to use its tradename, approved scripts and proprietary pricing and product information. The agents, sub-agents and marketers acted pursuant to a valid agency theory - actual authority, apparent authority, ratification. The actual authority is because the Defendant, American – Amicable Life Insurance Company of Texas, has and maintained control over the timing, quantity and geographic location of the agents, sub-agents and marketers unauthorized robocalls.

57)    The Defendant, American – Amicable Life Insurance Company of Texas, agents, sub-agents and marketers have actual authority. A principal/agent relationship exists. The Defendant, American – Amicable Life Insurance Company of Texas, controlled and had the right to control the agents, sub-agents and marketer's conduct. The conduct of the agents, sub-agents and marketers fell within the scope of the agency.

58)    The apparent authority arises out of the agents, sub-agents and marketers, illegal robocalls calls to advertise and solicit the Defendant, American – Amicable Life Insurance Company of Texas, Life Insurance services to those individuals the Defendant, American – Amicable Life

17

Insurance Company of Texas has identified as their ideal customer. The Defendant, American –
Amicable Life Insurance Company of Texas Complete Auto Care, Inc., gave authority to the
agents, sub-agents and marketers to use its tradename, approved scripts, and proprietary pricing
and product information when contacting prospective customers for the Defendant, American –
Amicable Life Insurance Company of Texas, Life Insurance services in an attempt to market and
sell the Life Insurance services.

59)    The Defendant, American – Amicable Life Insurance Company of Texas, accepted the
Plaintiff, Charles H. Landwer, as a client and the Defendant received a benefit from the agents,
sub-agents and marketers unauthorized and illegal calls. The Defendant, US Funeral Expenses,
now believed they had the Plaintiff as a customer of the Defendant American – Amicable Life
Insurance Company of Texas.

**Defendant American – Amicable Life Insurance Company of Texas Business Practices**

60)    The Defendant, American – Amicable Life Insurance Company of Texas is a Texas
business duly registered with the Texas Department of Insurance, is in the business of providing
Life Insurance products to consumers.

61)    In an effort to generate sales leads, the Defendant, US Funeral Expenses, initiates
thousands of outbound telephone calls that deliver artificial or prerecorded voice messages
("robocalls") to residential and/or cellular telephone numbers of residents of the United States. The
Defendant, American – Amicable Life Insurance Company of Texas, has a contractual relationship
with the agents, sub-agents and marketers of US Funeral Expenses to contact prospective

customers of American – Amicable Life Insurance Company of Texas and attempt to market and sell the Defendant American – Amicable Life Insurance Company of Texas Life Insurance products.

62) The Defendant, US Funeral Expenses, agents, sub-agents and marketers' initiates calls to residential telephone lines and/or cellular telephone lines using artificial or prerecorded voices to deliver messages without the prior express consent of the called parties.

63) The Defendant, US Funeral Expenses, robocall campaigns advertise the Defendant, American – Amicable Life Insurance Company of Texas Life Insurance products. The Defendant, US Funeral Expenses, agents, sub-agents and marketers make telephone calls to prospective customers of the Defendant, American – Amicable Life Insurance Company of Texas Life Insurance products. These calls are often made in violation of the TCPA and the Act.

64) From at least June of 2022 through late 2024, the Defendant, US Funeral Expenses, conducted their robocall business through agents, sub-agents and marketers. From January 1, 2022, to at least October 23, 2024, the Defendant, American – Amicable Life Insurance Company of Texas, directly participated in and controlled the day-to-day operations of the third-party provider, the Defendant, US Funeral Expenses, who placed tens of thousands of robocalls.

65) The Defendant, US Funeral Expenses, agents, sub-agents and marketers, in generating leads, have placed tens of thousands of abusive robocalls to the residential and/or cellular telephone numbers of consumers.

19

66)     Although the Defendant, US Funeral Expenses, agents, sub-agents and marketers are aware of the various federal telemarketing laws intended to protect the privacy of consumers from unwanted and harassing phone calls, the Defendant's US Funeral Expenses, agents, sub-agents and marketers willfully initiate calls to consumers in disregard for such laws. When one is engaged in a business and purchases, sets-up and deploys that equipment in an illegal manner, they need to be held responsible as to prevent others from falling victim to these illegal tactics, which include, invasion of privacy, harassment, and economic harm designed to scam consumers.

67)     The Defendant, US Funeral Expenses, agents, sub-agents and marketers initiate telephone calls using artificial or prerecorded voices to deliver messages that fail to clearly identify, at the beginning of the message, the business, individual, or other entity responsible for initiating the call.

68)     In many instances, consumers who answer calls initiated by the Defendant, US Funeral Expenses, agents, sub-agents and marketers are greeted by automated, prerecorded voice messages. For example, many of the calls the Defendant's agents, sub-agents and marketers initiate are related to the Defendant, American – Amicable Life Insurance Company of Texas Life Insurance products, one message used by the Defendant's agents, sub-agents and marketers' states,

> "Hi, this is Hannah Walker. I'm with US Funeral Expenses. How are you doing today?
> …
> Oh, I'm doing great. Thank you so much for asking. Okay, I'm with US Funeral Expenses, and based on our records, it shows that you may qualify for a state-regulated final expense insurance plan. That's going to cover 100 % of your funeral, burial, and cremation expense. Are you between the ages of 50 and 80 years old?"

69)    In many instances, Defendant, American – Amicable Life Insurance Company of Texas, agents, sub-agents and marketers initiate outbound telephone solicitations to telephone numbers registered on the National Do Not Call Registry or to telephone numbers registered on state-specific do-not-call registries. The Defendant's agents, sub-agents and marketers placed an outbound telephone solicitation to the Plaintiff whose number is on the National Do Not Call Registry on Wednesday, 23 October 2024 at 8:42 a.m. CST, from a 'Spoofed' number of 312.481.7248, the calls duration was one hour twenty-four seconds. (1:00:24)

70)    In order to continue to perpetuate their illegal conduct, the Defendant's agents, sub-agents and marketers takes and/or took steps to avoid being identified, including failing to transmit accurate caller identification information. For example, the Defendant's agents, sub-agents and marketers often engaged in the practice of "spoofing," whereby they knowingly transmitted misleading or inaccurate telephone numbers through the caller identification service.

71)    The Defendant's agents, sub-agents and marketers often replaced their actual phone number with a phone number with the same area code and prefix of the call recipient to mislead the recipient into believing the call is coming from someone local and known to the recipient. The techniques that are utilized, calling numbers that appear on the "National Do Not Call Registry"; "Spoofing", "Neighborhood Spoofing"; "robocalls"; "Automatic Telephone Dialers" and "prerecorded voices calls," are in direct violation of the TCPA - Telephone Consumer Protection Act 47 U.S.C. § 227 and the ACT.

72)    The Defendant, American – Amicable Life Insurance Company of Texas, agents, sub-agents and marketers further attempted to conceal their identities by delivering robocalls that fail to accurately identify the Defendant's agents, sub-agents and marketers.

73)    It is difficult for a consumer to tell what phone calls are "regular," legitimate calls, which calls are telemarketing and what calls are out outright fraud. Upon information and belief, the Plaintiff received other calls from or on behalf of the Defendant by the Defendant's agents, sub-agents and marketers.

74)    The Defendant, American – Amicable Life Insurance Company of Texas, Complete Business Model is to have its agents, sub-agents and marketers generate sales derived through autodialed and prerecorded calls to consumers' cellular telephone numbers without the called parties consent or acquiescence.

### Facts Supporting Causes Of Action

75)    The Plaintiff first registered his cellular phone number 312.590.8028 on the National Do Not Call Registry in May of 2018 and the Plaintiff recently renewed the registration in March of 2021.

76)    At all times relevant, the Plaintiff, was the sole subscriber, owner and operator of the cellular phone number ending in 8028. The Plaintiff was issued the phone number ending in 8028 in April of 2018 and has maintained that phone number, exclusively, without interruption, since April 2018.

77)    The Defendant, American – Amicable Life Insurance Company of Texas, sells its Life Insurance products directly to consumers, and also partners with authorized third-party providers.

78)    The Defendant, American – Amicable Life Insurance Company of Texas, compensates the third-party provider, the Defendant, US Funeral Expenses, for each Life Insurance product customer that agrees to become a customer of the Defendant, American – Amicable Life Insurance Company of Texas. The Defendant, American – Amicable Life Insurance Company of Texas, agents, sub-agents and marketers use whatever method is necessary to convince the called party to agree to purchase the Defendant, American – Amicable Life Insurance Company of Texas, Life Insurance products. Several of these methods used are illegal under the TCPA and the ACT.

79)    The Defendant, American – Amicable Life Insurance Company of Texas, also exercises control over these third-party providers by retaining the right to discipline and terminate these relationships when an agent, sub-agent or marketer veers from the phone-script or when the third party violates the Telephone Consumer Protection Act.

80)    The Defendant engaged in something referred to in the telemarketing industry as "Spoofing"

> Spoofing is when a caller utilizes an electronic device to deliberately falsifies the information transmitted to the calls recipient's caller ID display to disguise the caller's identity. The individuals who utilize these "Spoofing" devices use them to falsify the phone number from which they are calling in hope of getting the recipient of the call to answer the call. The recipient's caller ID is made to appear that the call is coming from a legitimate business or government agency or other trusted source.

81)     The Defendant, American – Amicable Life Insurance Company of Texas, third-party providers utilized a device to "Spoof" the phone number that was being used to contact consumers. The Defendant, US Funeral Expenses, used a Spoofing device when calling the Plaintiff and "Spoofed" the Phone Number 312.481.7248 to lead the Plaintiff to believe he was being called by a local number, perhaps a friend or acquaintance.

82)     These calls were made in an attempt to sell the Plaintiff, the Defendant, American – Amicable Life Insurance Company of Texas, Life Insurance products. The phone number utilized to call the Plaintiff was 312.481.7248.

83)     The Defendant, American – Amicable Life Insurance Company of Texas, agents, sub-agents or marketers engaged in something referred to in the telemarketing industry as "Neighborhood Spoofing"

> Neighborhood Spoofing or Neighbor Spoofing is when callers use an electronic device to deliberately transmit a reliable-looking phone number to the recipient's caller ID to disguise the caller's identity. The phone number might have a prefix with the call recipient's area code or look like it belongs to a local business or even someone the calls recipient may know. Callers use various techniques to disguise themselves behind legitimate numbers. They can also rotate their numbers to avoid being blocked or reported. The idea is that people typically answer phone numbers from the area they live in or that they recognize. These illegal actions mean the caller has a better chance of getting their phone call answered and someone on the line.

84)     The Plaintiff, prior to receiving the Defendant, American – Amicable Life Insurance Company of Texas, agents, sub-agents or marketers phone calls, was not aware of what or who the Defendant, American – Amicable Life Insurance Company of Texas, was or why the Plaintiff

would be having different entities calling him. The Plaintiff was confused on the solicitation calls, often questioning the representative as to why he was calling the Plaintiff and, on whose behalf, he was calling the Plaintiff.

85)    The Plaintiff, after speaking with the Defendant, US Funeral Expenses, agents, sub-agents or marketers, discovered that it was trying to solicit the Plaintiff to become a customer of the Defendant, American – Amicable Life Insurance Company of Texas. The Defendant, American – Amicable Life Insurance Company of Texas, agents, sub-agents and marketers were attempting to have the Plaintiff agree to purchase American – Amicable Life Insurance Company of Texas, Life Insurance products.

86)    The Plaintiff is unaware as to how the Defendant, American – Amicable Life Insurance Company of Texas, agents, sub-agents or marketers obtained his information, as he was not interested in purchasing Life Insurance products or acquiring any of the American – Amicable Life Insurance Company of Texas, Life Insurance products.

87)    The Plaintiff was contacted on his cellular telephone number, 312.590.8028, by the Defendant, US Funeral Expenses, agents, sub-agents or marketers on Wednesday, 23 October 2024 at 10:42 a.m. CST. The call lasted on hour and twenty-four seconds. (1:00:24)

88)    The Call came from a "Spoofed" phone number, 312.481.7248, at 10:42 a.m. CST.

89)    The Call began with a Recorded Phone Message, which stated:

"Hi, this is Hannah Walker. I'm with US Funeral Expenses. How are you doing today?

Oh, I'm doing great. Thank you so much for asking. Okay, I'm with US Funeral Expenses, and based on our records, it shows that you may qualify for a state-regulated final expense insurance plan. That's going to cover 100% of your funeral, burial, and cremation expense. Are you between the ages of 50 and 80 years old?"

90)    The Call continued with a live agent, "Ryan Hawkins," who stated:

"So, Charles, once again, my name is Ryan Hawkins. I'm going to verify the information that qualifies you for a quote for final expense insurance?"

91)    The Call continued with the live agent, " Ryan Hawkins," stating:

"Well, sir, the funeral normally costs, we have a code for $10,000. Okay? If you like $10,000, okay? If you like to raise, you can determine different options. Now, let's say if you like to raise, this plan would be for yourself or for a loved one."

92)    The Plaintiff is unaware as to how the Defendant, American – Amicable Life Insurance Company of Texas, agents, sub-agents or marketers obtained his information, as he was not interested in purchasing a Final Expense Life Insurance product or acquiring the American – Amicable Life Insurance Company of Texas, Life Insurance products.

93)    The Plaintiff, who suffers from a disability, was berated and harassed by the Defendant, US Funeral Expenses and the Defendant, American – Amicable Life Insurance Company of Texas agents, sub-agents or marketers during the phone call.

**Causes Of Action**

**Count  One**

**Violating the National Do Not Call Registry**

94)    The Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

95)    The Plaintiff registered his phone number on the National Do Not Call Registry in May of 2018 and recently renewed the registration in March of 2021.

96)    The Defendant, US Funeral Expenses, agents, sub-agents and marketers violated 47 C.F.R. § 64.1200(c)(2) and 47 U.S.C. § 227(c) by engaging in a pattern or practice of initiating telephone solicitations to residential telephone subscribers, including subscribers whose telephone numbers were listed on the National Do Not Call Registry. One such subscriber who was listed on the National Do Not Call Registry is the Plaintiff.

97)    The Defendant, American – Amicable Life Insurance Company of Texas, hired and contracted with US Funeral Expenses, whose agents, sub-agents or marketers' violations are willful, wanton and knowing.

## Count Two
### Violating the Prohibition against the Use of Artificial or Prerecorded Voices to Cellular Telephone Lines

98)    The Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

99)    The Defendant, US Funeral Expenses, agents, sub-agents or marketers violated 47 C.F.R § 64.1200(a)(1)(iii) and 47 U.S.C. § 227(b)(1)(A)(iii) by engaging in a pattern or practice of initiating telephone calls to cellular telephone lines, including lines, using artificial and prerecorded voices to deliver a message without the prior express written consent of the called party and where the call was not initiated for emergency purposes or exempted by rule or order of the Federal Communications Commission under 47 U.S.C. § 227(b)(2)(B).

100)    The Defendant, US Funeral Expenses, agents, sub-agents or marketers violated 47 C.F.R. § 64.1200(a)(2) by engaging in a pattern or practice of initiating telephone solicitations to cellular telephone lines, including lines using artificial or prerecorded voices to deliver a message relating to Life Insurance products without the prior express written consent of the called party, the Plaintiff. These violations were performed against the Plaintiff without just cause. The Plaintiff did not consent to the, agents, sub-agents or marketers robocalls. The robocalls were not placed in an emergency situation and were not placed for emergency purposes.

101)    The Defendant, US Funeral Expenses, agents, sub-agents or marketers engaged in a pattern or practice of initiating telephone solicitations to cellular telephones.

102)    The Defendant, US Funeral Expenses, agents, sub-agents or marketers' actions were willful, wanton and knowing.

**Count Three**
**Violating the Prohibition against**
**Misleading or Inaccurate Caller Identification Information**

28

103)    The Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

104)    The Defendant, US Funeral Expenses, agents, sub-agents or marketers violated 47 C.F.R. § 64.1200(b)(1) and 47 U.S.C. § 227(d)(3)(A) by initiating telephone calls to cellular telephone lines using artificial or prerecorded voices to deliver messages to residents that failed to clearly state, at the beginning of the message, the identity of the business, individual, or other entity responsible for initiating the call.

105)    Once the Plaintiff answered the telephone call, the call began with a recorded message, then a live voice came on the phone that started, "I'm with US Funeral Expenses, and based on our records, it shows that you may qualify for a state-regulated final expense insurance plan. That's going to cover 100 % of your funeral, burial, and cremation expense." This misleading statement was made to trick the Plaintiff.

106)    The Defendant, US Funeral Expenses, agents, sub-agents or marketers' violations are willful, wanton and knowing.

## Count Four
### Violating the Prohibition against
### Misleading or Inaccurate Caller Identification Information

107)    The Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

108)    The Defendant, US Funeral Expenses, agents, sub-agents or marketers violated 47 C.F.R.

§ 64.1604(a) and 47 U.S.C. § 227(e)(1) by engaging in a pattern or practice of initiating telephone

calls and, with the intent to defraud, cause harm, or wrongfully obtain anything of value,

knowingly caused, directly or indirectly, caller identification services to transmit or display

misleading or inaccurate caller identification information.

109)    The Defendant, US Funeral Expenses, agents, sub-agents or marketers tried desperately to

charge the Plaintiff's Bank Account numerous times for varying amounts. Amounts far in excess

of what the Life Insurance products routinely cost.

110)    The Defendant, Complete Auto Care, Inc's, agents, sub-agents or marketers' violations are

willful, wanton, knowing and the Plaintiff believes, criminal.

### Request For Relief

WHEREFORE, Plaintiff, Charles H. Landwer, requests that the Honorable Court enter an

order and judgment as follows:

A.    Awarding of actual, statutory, and if appropriate, treble damages;

B.    Awarding reasonable costs;

C.    Awarding such other and further relief that the Honorable Court deems reasonable and just.

### Jury Demand

Pursuant to Rule 38(b), Plaintiff hereby demands trial by jury on all claims and issues so

triable.

Dated:  28  October  2024

Respectfully submitted,

Charles H. Landwer
Plaintiff, <u>pro se</u>

Charles H. Landwer
27W165 Schick Road
Hanover Park, Illinois
60133-6719
charleslandwer@gmail.com
312.590.8028

mail to:
P.O. Box 91
Streamwood, Illinois
60107-0091